41960. MITCHELL v. THE STATE.
(329 SE2d 481)

SMITH, Justice.

A DeKalb County jury convicted Eddie Mitchell, appellant, for the murder of Donella Mitchell, his wife. He was sentenced to life imprisonment. On appeal, he raises nine enumerations of error. We affirm.[1]

The victim asked appellant to move out of their apartment in February of 1983. Appellant moved out, but continued to visit the apartment to bring food to the victim and their three very young children. Appellant, at some point, developed the belief that the victim had become a prostitute, and consequently he began to appear at her apartment at odd hours to watch or threaten her.

She called the police on a number of occasions, but she would not press charges against appellant. The police referred her to the Council on Battered Women after she reported that appellant had hit her.

---

[1] The crime was committed on March 6, 1983. The DeKalb County jury returned its verdict of guilty on October 20, 1983. A motion for new trial was filed on November 15, 1983, heard and denied on November 20, 1984. Notice of appeal was filed on December 6, 1984. The transcript of evidence was filed on January 19, 1984. The record was docketed in this court on January 16, 1985. The case was submitted on March 1, 1985.

This caused appellant's anger to escalate.

In response to appellant's continued threats, the victim asked a neighbor to send her children to spend the night at the victim's apartment for protection on the night of March 5, 1983. The children stayed for a while but did not spend the night. Early in the morning on March 6, another neighbor heard the victim and appellant arguing quietly in the victim's apartment. She also heard a loud thump before she went to sleep.

On March 6 and March 7, the Atlanta and DeKalb Police Departments received and taped a number of calls from an unidentified person who claimed that a bad event or a murder had taken place at the victim's apartment, and that there were young children in the apartment in need of help. On March 7, the police went to the apartment where they found the victim stabbed to death. The children were extremely dirty and were suffering from dehydration.

At trial, the state produced testimony that the victim had been killed on the night of March 5 or the morning of March 6. A number of people testified that they recognized the voice on the tapes of the calls to the police as that of the appellant.

1. In his second enumeration of error, appellant claims that the trial court erred in denying his motion for a directed verdict. We find that the evidence presented at trial could have authorized a rational trier of fact to find appellant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, appellant claims that the trial court erred in allowing the state to recall its own witness for the purpose of impeaching him.

The witness, on direct examination, contradicted a previous statement that he had made to the police. The district attorney did not realize that the witness had done this until the witness had been excused. He recalled the witness and used the previous statement to impeach him. We find no violation of *Wilson v. State*, 235 Ga. 470, 475 (219 SE2d 756) (1975) or *Davis v. State*, 249 Ga. 309 (290 SE2d 273) (1982). We thus find no error.

3. Appellant asserts, in his third enumeration of error, that the trial court erred in refusing to charge the jury that it must decide, based only upon in-court testimony, whether appellant was guilty beyond a reasonable doubt.

The Court charged the jury that the presumption of innocence "remains with [the defendant] . . . unless the State produces evidence in your presence and hearing sufficient to satisfy your minds beyond a reasonable doubt of the Defendant's guilt of the offense charged." We find no error. *Boyd v. State*, 253 Ga. 515, 516 (322 SE2d 256) (1984).

4. In his fourth enumeration, appellant charges that the trial

court erred in refusing to allow his attorney to request a police officer, on the stand, to explain contradictions between another officer's report and testimony concerning the whereabouts of appellant's brother on the night of the murder. We conclude from the record that the officer actually answered appellant's question in previous testimony, when he stated, "I believe that particular part of what you show me says that [appellant's brother] was not with [appellant] that night." We find no error.

5. In his fifth and ninth enumerations, appellant questions various aspects of the introduction of evidence establishing difficulties between appellant and the victim prior to her death.

a. He first claims that witnesses from the Council on Battered Women testified as to hearsay. The women testified as to records made during a call from the victim to the Council and as to the victim's statements made then. This testimony certainly was hearsay testimony. As the records noted the contents of a conversation, not an act, transaction, occurrence, or event, the business records exception to the hearsay rule was inapplicable. OCGA § 24-2-14.

We find, however, in light of the evidence here, that the testimony in question in all likelihood did not contribute to appellant's conviction. We thus find no reversible error. *Middlebrooks v. State*, 253 Ga. 707 (324 SE2d 192) (1985).

b. Evidence of previous difficulties between appellant and the victim was admissible to show notice, intent, or bent of mind. *Sheridan v. State*, 253 Ga. 712 (324 SE2d 472) (1985). The trial court did not err in so charging the jury.

6. Appellant next contends that the tapes of calls made to the Atlanta and DeKalb County police departments were irrelevant to this case and were so prejudicial that they should have been excluded.

A number of witnesses familiar with appellant's voice testified that the anonymous voice on the tapes belonged to appellant. The state presented detailed testimony as to the process used in producing the tapes. The state, thus, laid the proper foundation for the admission of the tapes. *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 212 (88 SE2d 167) (1955). While discovery of a murder in itself does not imply that the discoverer was the murderer, the jury could infer, from the contents of these calls in light of other evidence in this case, that appellant possessed a guilty knowledge of the murder. The tapes were relevant and admissible.

7. Appellant next asserts that his statement to a police investigator was not voluntary and that he did not waive his right to an attorney, therefore his statement should not have been admitted as evidence.

a. The investigating officer handed appellant a sheet of paper listing appellant's rights and provisions for waiver of those rights. Ap-

pellant, upon reading the information, asked for an explanation of the provision for waiver of the right to have an attorney present upon making a statement. After hearing the officer's explanation of waiver of that right, appellant said that he would not sign the waiver because he always "[got] in trouble" when he signed anything.

He stated that he understood the right to an attorney and the provisions for waiver. He also expressed a willingness to make a statement because of his feeling that he had done nothing wrong. He subsequently made the statement, but still refused to sign.

*Spain v. State*, 243 Ga. 15 (252 SE2d 436) (1979), presented very similar facts; only there, the district attorney had agreed with the appellant's attorney "to do everything in his presence." Here, as in *Spain*, we conclude that the trial court did not err in ruling that the state carried its burden of showing a knowing waiver of a known right. See *North Carolina v. Butler*, 441 U. S. 369 (99 SC 1755, 60 LE2d 286) (1979).

b. The investigator questioning appellant told him that if he had an alibi, he should tell the investigator so the police could check out the alibi. He said that if the alibi checked out, he would have the charges against appellant dropped. Appellant claims that this constituted an inducement of hope of benefit which rendered appellant's subsequent statement involuntary.

The officer told appellant that a statement revealing a valid alibi might bring about his release. He did not tell appellant that a statement alone would bring about his release. Appellant was offered hope of benefit for producing a valid alibi, not a statement. We find no error. *Tyler v. State*, 247 Ga. 119, 122 (274 SE2d 549) (1981).

8. Appellant finally contends that the trial court improperly admitted evidence of his "prior bad acts."

Appellant objects to the testimony of a City of Atlanta police officer to the effect that appellant had tried to break into the victim's apartment in late February of 1983. Evidence of independent crimes is admissible to show motive or intent where the state shows that the defendant committed the independent crime and a similarity or connection between that crime and the crime at issue. *Gladson v. State*, 253 Ga. 489, 492 (322 SE2d 45) (1984). The state satisfied these requirements, therefore we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 10, 1985.

*William T. Hankins III*, for appellant.
*Robert E. Wilson*, District Attorney, *Susan Brooks*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, *J. Michael*

*Davis,* for appellee.